**ATLANTIC STATES LEGAL FOUNDATION, INC. and Rainbow Alliance for a Clean Environment, Inc., Plaintiffs–Appellants,**

v.

**PAN AMERICAN TANNING CORPORATION, Defendant–Appellee.**

**No. 627, Docket 92–7723.**

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1992.

Decided May 14, 1993.

Finally Submitted March 22, 1993.

Charles M. Tebbutt, Buffalo, NY (Allen, Lippes & Shonn, for plaintiff-appellant Atlantic States Legal Foundation, Inc.; Peter W. Henner, Albany, NY, for plaintiff-appellant Rainbow Alliance for a Clean Environment, Inc.), of counsel.

Philip H. Dixon, Albany, NY (Whiteman Osterman & Hanna, Elizabeth M. Morss, of counsel), for defendant-appellee.

Before: FEINBERG, CARDAMONE and PRATT, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiffs Atlantic States Legal Foundation, Inc. (ASLF) and Rainbow Alliance for a Clean Environment, Inc. (Rainbow Alliance), appeal from an order of the United States District Court for the Northern District of New York, Neal P. McCurn, Ch.J., dismissing as moot their citizen suit against defendant Pan American Tanning Corp. (Pan American), brought under the Clean Water Act (the Act), 33 U.S.C. § 1251 et seq., 807 F.Supp. 230. The question presented is whether a citizen suit for injunctive relief and for civil penalties under § 505 of the Act is moot when, following a series of admitted violations of the Act that continued past the date on which the complaint was filed, the defendant enters into a settlement with a local enforcement agency covering some of the violations and establishes that any allegedly wrongful behavior cannot reasonably be expected to recur. We hold that under these circumstances a suit for penalties is not moot, even though the plaintiffs' accompanying request for injunctive relief is.

## I. Background

ASLF and Rainbow Alliance are not-for-profit environmental organizations. Pan American operates a tannery in Gloversville, New York, and uses an internal pretreatment system to remove pollutants from the wastewater its operations produce. It then discharges this water through the sewer system into a publicly-owned treatment works (POTW) called the Gloversville–Johnstown Joint Wastewater Treatment Facility. This facility, operated by the Gloversville–Johnstown Joint Sewer Board (JSB), treats the wastewater again, finally discharging it into a local creek. Pan American's discharges are limited by a JSB permit and by federal regulations.

The JSB brought enforcement proceedings against Pan American, issuing five appear-

ance tickets to it between August 1989 and August 1990. Each appearance ticket required Pan American to appear in Gloversville City Court. Pan American pleaded guilty to violations alleged in the first two tickets, and the City Court imposed a fine of $700. With respect to the remaining three tickets, which alleged violations occurring between May 1989 and June 1990, Pan American entered into a settlement order with the JSB on December 27, 1990. Pursuant to the settlement, Pan American paid $4,100 in penalties and agreed to accelerate the improvement of its internal pretreatment system, a process it had begun some time earlier. Pan American also paid additional penalties of $2,500, as stipulated in the order, for violations occurring between October 1990 and June 1991. The improvement was completed in March 1991 although minor problems remained that were worked out later.

In June 1990, plaintiffs gave Pan American notice of their intent to sue, which the Act requires as a prerequisite to a citizen suit. On August 14, 1990, plaintiffs filed their complaint, alleging that Pan American had been in violation of the Act since November 1985 and continued to be in violation. Plaintiffs requested declaratory and injunctive relief, civil penalties, the right to monitor Pan American's compliance for a limited period and attorney's fees.

Plaintiffs moved for partial summary judgment, claiming that 173 violations had occurred by the time of the motion and that Pan American had acknowledged culpability for 57 and had raised unavailing legal defenses for 65 others. Of the 173 total violations, plaintiffs claimed that 34 had occurred since they filed the complaint. Pan American cross-moved for summary judgment, arguing that the case was moot, that plaintiffs lacked standing and that plaintiffs had failed to join the JSB as a necessary party.

The district court granted Pan American's motion on mootness grounds, reasoning that, at the time of its ruling, it was "absolutely clear that ... discharges cannot reasonably be expected to recur." This appeal followed.

## II. Discussion

### A. Mootness

Section 505 of the Act authorizes citizen suits against "any person ... who is alleged *to be in violation*" of state or federal effluent standards or limitations. 33 U.S.C. § 1365(a)(1) (emphasis added). In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (Gwaltney I), the Supreme Court held that this language does not confer federal jurisdiction over citizen suits for "wholly past violations." Id. at 64, 108 S.Ct. at 384. According to the Court, the "most natural reading" of the language "to be in violation" is as "a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Id. at 57, 108 S.Ct. at 380; accord *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1311 (2d Cir.1993).

Following its discussion of jurisdiction, the Court briefly addressed the concern that citizen plaintiffs who properly invoked the district court's jurisdiction would be able "to press their suit to conclusion," even if the jurisdiction-conferring "allegations of ongoing non-compliance become false at some later point in the litigation because the defendant begins to comply with the Act." Gwaltney I, 484 U.S. at 66, 108 S.Ct. at 386. The Court observed in dicta that this legitimate concern could properly be addressed through the doctrine of mootness:

> Longstanding principles of mootness ... prevent the maintenance of suit when "there is no reasonable expectation that the wrong will be repeated." In seeking to have a case dismissed as moot, however, the defendant's burden "is a heavy one." The defendant must demonstrate that it is *"absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." Mootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants

who seek to evade sanction by predictable "protestations of repentance and reform." Id. at 66–67, 108 S.Ct. at 386 (citations omitted).

Pan American argues that this discussion—especially the reference to having "a case" dismissed as moot—requires a citizen plaintiff's *entire* suit to be dismissed as moot if a defendant can show, with absolute clarity, that it has come into compliance after the complaint was filed; that is, if it can show "that the allegedly wrongful behavior could not reasonably be expected to recur." We disagree.

The Court's discussion of mootness in *Gwaltney I* leaves open the question of whether mootness bars only claims for injunctive relief or whether it also bars claims for civil penalties. Generally, when a plaintiff seeks both injunctive relief and damages or penalties, the Supreme Court has long directed courts to analyze a mootness claim directed at one form of relief separately from a mootness claim directed at the other. See, e.g., *Ellis v. Brotherhood of Ry. Clerks*, 466 U.S. 435, 441–42, 104 S.Ct. 1883, 1888–89, 80 L.Ed.2d 428 (1984); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 111, 103 S.Ct. 1660, 1669, 1670, 75 L.Ed.2d 675 (1983); *Powell v. McCormack*, 395 U.S. 486, 496–97 n. 8, 89 S.Ct. 1944, 1951, n. 8, 23 L.Ed.2d 491 (1969).

Consistent with this longstanding directive, two circuits have held that a citizen suit for civil penalties under the Act can survive when post-complaint compliance with the Act renders a suit for injunctive relief moot. Construing the language quoted above from *Gwaltney I*, the Eleventh Circuit ruled that "the mooting of injunctive relief will not moot the request for civil penalties as long as such penalties were rightfully sought at the time the suit was filed." *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir.1990). The court emphasized the practical consequences of requiring a citizen suit to be dismissed in its entirety when a defendant achieves compliance after the complaint is filed. The court believed, for example, that such an approach would diminish the incentive for citizen suits, weaken the Act's deterrent effect and encourage violators to use delaying tactics in the litigation since they could escape all liability through post-complaint compliance. See id. at 1135–37.

In a further appeal to the Fourth Circuit after the Supreme Court's remand in *Gwaltney I*, the Fourth Circuit reached the same conclusion as the Eleventh Circuit. See *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696–97 (4th Cir.1989) (Gwaltney III).[1] In its analysis, the Fourth Circuit focused on the "structure" of the Act, starting with the premise that "civil penalties attach as of the date a . . . violation occurs." Id. at 696. From this premise, the court reasoned that when the Supreme Court concluded in *Gwaltney I* that the Act "permits citizens' actions against polluters while there are ongoing violations, the Court effectively approved the assessment of penalties based on past violations" because these were "the only possible basis for assessing a penalty." Id. at 696–97. Of course, because federal courts lack jurisdiction over citizen suits for "wholly past" violations, the court indicated that civil penalties could be recovered only for those "past violations that were part of or which contiguously preceded the ongoing violations." Id. at 697.

We find these decisions persuasive. A rule requiring dismissal of a citizen suit in its entirety based on a defendant's post-complaint compliance appears to conflict with the language of the Act. Under such a rule, a penalty suit would *always* become moot and a defendant would escape *all* liability if it could show, at any time before judgment, "that the allegedly wrongful behavior could not reasonably be expected to recur." Gwaltney I, 484 U.S. at 66, 108 S.Ct. at 386. Yet, as the Fourth Circuit noted in *Gwaltney III*, § 1319(d) of the Act provides that any person who violates effluent limitations or permit conditions "*shall* be subject to a civil penalty." 890 F.2d at 697. Allowing a discharger to escape all liability by virtue of its

---

1. *Gwaltney II* was decided by the Fourth Circuit directly from the Supreme Court's remand. See *Chesapeake Bay Found., Inc. v. Gwaltney of* *Smithfield, Ltd.*, 844 F.2d 170 (4th Cir.1988) (per curiam).

post-complaint compliance cannot be squared with this mandatory language.

In addition, we agree with the Eleventh Circuit's view in *Tyson* that mooting an entire suit based on post-complaint compliance would weaken the deterrent effect· of the Act by diminishing the incentives for citizen plaintiffs to sue and by encouraging defendants to use dilatory tactics in litigation. Pan American suggests, however, that disallowing civil penalties when a defendant comes into compliance after a complaint is filed will not significantly diminish the incentive for citizens to bring suit because they can still recover attorney's fees. Pan American further suggests that because any penalties imposed go to the United States Treasury (Treasury) and not to the citizen plaintiff, the pursuit of these monies cannot provide an incentive. We disagree. Citizen plaintiffs often initiate suit not to recover monetary awards for their own benefit, but rather to ensure that penalties are imposed so as to deter future violations.

We hold therefore that a defendant's ability to show, after suit is filed but before judgment is entered, that it has come into compliance with limits on the discharge of pollutants will not render a citizen suit for civil penalties moot. Civil penalties may still be imposed for post-complaint violations and for violations that were ongoing at the time suit was filed. See Tyson, 897 F.2d at 1134–35; Gwaltney III, 890 F.2d at 697.

At the time it ruled on Pan American's motion for summary judgment, the district court here found that Pan American ·had clearly shown that the allegedly wrongful behavior could not reasonably be expected to recur. Yet the court also found—and Pan American acknowledged—that there . were ongoing violations at the time plaintiffs filed suit. Under these circumstances, civil penalties can still be imposed, though only for post-complaint violations and for violations that were ongoing at the time plaintiffs filed suit.

B. *Atlantic States Legal Found., Inc. v. Eastman Kodak Co.*

 The analysis set forth above relies on the distinction between civil penalties and injunctive relief in the context of alleged mootness. The district court, however, felt compelled to reject this distinction and to dismiss plaintiffs' entire suit based on this court's recent decision in *Atlantic States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124 (2d Cir.1991). Pan American argues to us that the district court was correct since *Kodak* treats citizen suits as a whole and requires dismissal of the entire suit when there is no "realistic prospect that the violations alleged in [the] complaint will continue." Id. at 127. Because of the importance of this issue, we requested and received amicus briefs from the JSB, the New York State Department of Environmental Conservation and the Environmental Protection Agency (EPA), in response to which the parties also provided additional briefing.

· In *Kodak*, ASLF (one of the two plaintiffs here) filed a citizen suit on August 11, 1989. Some time later, on April 5, 1990, Kodak and the New York State Department of Environmental Conservation entered into a settlement covering a variety of claims against Kodak. Pursuant to the settlement, Kodak agreed to pay $1 million in civil penalties and $1 million in a criminal fine imposed by a state court and also agreed to undertake numerous measures designed to prevent further violations of environmental laws at its facility. Despite the settlement, ASLF pressed forward with its suit. The district court dismissed the complaint, and this court affirmed. See id. at 125–27.

The facts of *Kodak* differed in at least one important respect from those of the Fourth Circuit's decision in *Gwaltney III* and the Eleventh Circuit's decision in *Tyson.* In those cases, as in *Kodak,* the citizen plaintiffs had given notice of the alleged violation, and neither the EPA nor. the state ·had acted before the plaintiffs brought suit. In all three cases, therefore, the citizen plaintiffs were not statutorily precluded from initiating suit under 33 U.S.C. § 1365(b). In *Kodak* alone, however, the state took action after the citizen suit was initiated and thereafter reached a settlement with the discharger. In this situation and on the record before it, the *Kodak* panel reasoned that a citizen action must be dismissed "[i]f the state enforce-

ment proceeding has caused the violations alleged in the citizen suit to cease without any likelihood of recurrence." Id. at 127. Formulating its instructions to be followed on remand, the panel said that the citizen "action" should be dismissed as moot if there is no "realistic prospect that Kodak will continue to violate the Clean Water Act as alleged in the complaint." Id. at 128.

Pan American makes much of the panel's statement that the citizen "action" might have to be dismissed, asserting that this indicated the court's intent to dismiss the *entire* citizen action, and that the panel must necessarily have considered and intended dismissal of both the injunctive *and* penalty aspects of the citizen suit. This, however, is open to question, since this issue was not squarely presented in the briefs or argued to the panel.

Moreover, the panel's attention in *Kodak* was obviously focused on the state's enforcement action, which had covered the same violations alleged by the citizen plaintiff and had extracted $2 million from Kodak. The impact of the state settlement is mentioned in nearly every sentence of the panel's mootness discussion. See id. at 127. The obvious concern of the *Kodak* panel was that citizen suits "supplement, not supplant, state enforcement of the Act." Id. (citation omitted). It is clear that the *Kodak* panel did not want to give a citizen plaintiff the power to "revisit the terms of a settlement reached by competent state authorities" or to "further investigat[e] and monitor[ ] the state compromise absent some realistic prospect of the alleged violations continuing." Id. at 127–28.

Those facts are not present here. Unlike *Kodak*, the case before us involves a settlement that did not cover all of the violations plaintiffs allege and assessed small fines of only $6,600. It is true that Pan American spent some $250,000 to upgrade its wastewater treatment system, but it concedes that it began this project *before* the JSB began its enforcement efforts. Therefore, we do not have the situation that concerned the panel in *Kodak*, i.e., "[w]hether [a citizen suit] may continue in the face of a *dispositive* adminis-

trative and criminal settlement." Id. at 127 (emphasis added).

In addition, the JSB is a local agency. "The EPA and the states are the principal enforcers of the Clean Water Act." Reed D. Benson, Note, Clean Water Act Citizen Suits After *Gwaltney*: Applying Mootness Principles in Private Enforcement Actions, 4 J. Land Use & Envtl. L. 143, 144 (1988). In general, the Act accords the enforcement actions of local agencies less deference than it does those of state and federal agencies. For example, the Act provides that only *federal* or *state* civil or administrative penalty actions can preclude citizens suits. See 33 U.S.C. §§ 1319(g)(6)(A), 1365(b); see also *New York Pub. Interest Research Group, Inc. v. Limco Mfg. Corp.*, 697 F.Supp. 608, 610–11 (E.D.N.Y.1987). Similarly, the Act requires citizen plaintiffs to give notice to state and federal, but not to local, agencies before filing suit. See 33 U.S.C. § 1365(b)(1)(A). Also, federal regulations provide that the EPA or the state may "seek judicial relief and may also use administrative penalty authority when [a] POTW has sought a monetary penalty which [the EPA or the state] believes to be insufficient." 40 C.F.R. § 403.8(f)(1)(vi)(B).

On this record, it would be inconsistent with the goals of the Act to preclude plaintiffs from pursuing their suit for civil penalties, and *Kodak* does not require us to hold otherwise. Pan American's settlement with the JSB is insufficient to warrant dismissing plaintiffs' entire suit on mootness grounds.

The district court did not address plaintiffs' motion for partial summary judgment, and plaintiffs request us to direct the district court to enter an order granting that motion. We decline to do so, in accordance with the sound practice of allowing the district court to rule upon such motions first. Because the district court erred in holding that plaintiffs' entire citizen suit was mooted by Pan American's post-complaint compliance, we reverse and remand for proceedings consistent with this opinion.