**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

Nos. 96-3654/3919/4220

_____

| | |
|---|---|
| Comfort Lake Association, Inc., | * |
| | * |
| Plaintiff - Appellant/ | * |
| Cross Appellee, | * |
| | *　Appeals from the United States |
| v. | *　District Court for the |
| | *　District of Minnesota. |
| Dresel Contracting, Inc.; Fain | * |
| Companies, | * |
| | * |
| Defendants - Appellees/ | * |
| Cross Appellants. | * |

_____

Submitted:  October 22, 1997
Filed:  March 5, 1998

_____

Before McMILLIAN, LOKEN, and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Comfort Lake Association, Inc. ("Comfort Lake"), filed this citizen suit seeking injunctive relief, civil penalties, and costs and attorney's fees against Dresel Contracting, Inc., and Fain Companies ("Dresel and Fain") for alleged violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1387, commonly known as

the Clean Water Act. The district court[1] initially denied Dresel and Fain's motion for summary judgment, rejecting their contention that the Minnesota Pollution Control Agency ("MPCA") had commenced and was diligently prosecuting an administrative enforcement action that barred this citizen suit. See 33 U.S.C. § 1319(g)(6)(A)(ii). However, the court[2] later dismissed the action as mooted by MPCA's subsequent enforcement actions and denied Comfort Lake an award of costs and attorney's fees. Comfort Lake appeals; Dresel and Fain cross appeal the initial ruling. We conclude the claim for injunctive relief is moot, the claim for civil penalties is precluded by MPCA's enforcement action, and the district court did not abuse its discretion in denying attorney's fees. Accordingly, we affirm.

## I. Background.

The timing of the various activities underlying this dispute is significant. In the Fall of 1994, MPCA issued Dresel and Fain a National Pollution Discharge Elimination System ("NPDES") permit for construction of a Wal-Mart store in Forest Lake, Minnesota. The permit required erosion and sediment control facilities because run-off of pollutants from the construction site threatened the water quality of nearby Comfort Lake and its tributaries. After investigating complaints, MPCA sent Dresel and Fain a warning letter on December 20, 1994, noting permit violations. Dresel and Fain responded in early January 1995, claiming to have properly addressed these problems.

On January 31, Comfort Lake, a non-profit association dedicated to protecting the lake and its tributaries, issued a notice of intent to sue Dresel and Fain over the same NPDES permit violations noted in MPCA's December 20 letter. Under the Clean

---

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

[2]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

Water Act, plaintiff must give such a notice of intent to sue to the Administrator of the Environmental Protection Agency, the affected state agency, and the alleged violator at least sixty days before commencing a citizen suit. See 33 U.S.C. § 1365(b); Hallstrom v. Tillamook County, 493 U.S. 20 (1989). On April 3, Comfort Lake filed this citizen suit under 33 U.S.C. § 1365(a)(1).

Meanwhile, on February 13, MPCA again inspected the construction site, found continuing violations, and issued a Notice of Violation to Dresel and Fain. They responded that the violations were remedied, but after another inspection, MPCA issued a follow-up letter citing specific permit violations and demanding, within ten days, "a detailed schedule for correcting these deficiencies." MPCA issued a second Notice of Violation on May 10, advising Dresel and Fain that the MPCA Board would consider issuing an administrative cease and desist order at its May 23 meeting. On May 19, Dresel and Fain reported full compliance with the permit. MPCA promptly inspected, and a May 22 internal agency memorandum states that the violations had indeed been corrected.

Dresel and Fain completed store construction in November 1995 and applied for termination of the NPDES permit. MPCA terminated the permit on April 11, 1996. MPCA staff negotiated and then proposed to the agency Board a Stipulation Agreement requiring payment of $12,203 in civil penalties for all past violations of the permit, including $6,100 payable to the City of Forest Lake for "a diagnostic study of Comfort Lake." On May 21, 1996, MPCA issued its thirty-four page Findings of Fact, Conclusions of Law and Order approving the Stipulation Agreement over Comfort Lake's opposition. The Stipulation Agreement recites that it

> covers all alleged NPDES/SDS Permit violations that occurred at the Wal-Mart construction site and that were known by MPCA as of the effective date of this Agreement. The alleged violations are considered past violations that have been satisfactorily resolved or corrected. This

Agreement contains no remedial or corrective action requirements because construction at the Wal-Mart site has been completed. The NPDES/SDS Permit has been terminated; thus, there is no likelihood that NPDES/SDS Permit violations will recur at the Wal-Mart site.

Dresel and Fain then renewed their motion for summary judgment. The district court granted that motion, and in a separate order denied Comfort Lake an award of costs and attorney's fees. These appeals followed. Broadly stated, the issues are whether MPCA's enforcement actions preclude Comfort Lake's claims for injunctive relief and civil penalties, and whether the district court abused its discretion in denying an award of costs and attorney's fees.

## II. Is the Claim for Injunctive Relief Moot?

The doctrine that federal courts may not decide moot cases "derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964). A case may become moot at any time. "[I]t is not enough that a dispute was very much alive when suit was filed . . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit." Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990).

A claim for injunctive relief may become moot if challenged conduct permanently ceases. When the alleged violation underlying a Clean Water Act citizen suit ceases while the suit is pending, "[l]ongstanding principles of mootness . . . prevent the maintenance of suit when there is no reasonable expectation that the wrong will be repeated." Gwaltney of Smithfield v. Chesapeake Bay Found., Inc., 484 U.S. 49, 66 (1987) (quotation omitted). The district court concluded that Comfort Lake's claim for injunctive relief became moot when Dresel and Fain's NPDES permit terminated and MPCA approved the Stipulation Agreement. We agree.

-4-

At the outset, we address the applicable mootness standard. Comfort Lake argues that Dresel and Fain must prove it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." But that is the test when a defendant claims that its voluntary action has mooted a controversy. See United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968); United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). There was nothing voluntary about Dresel and Fain's compliance activities in this case. They were undertaken after the threat of enforcement action by MPCA. Moreover, the actions which allegedly mooted the citizen suit -- termination of the permit and approval of the Stipulation Agreement -- are actions of MPCA, not Dresel and Fain. MPCA's determination that "there is no likelihood" violations will recur is entitled to deference. In these circumstances, we agree with the Second Circuit that the claim for injunctive relief is moot unless Comfort Lake proves "there is a realistic prospect that the violations alleged in [its] complaint will continue notwithstanding" the permit termination and Stipulation Agreement. Atlantic States Legal Found., Inc. v. Eastman Kodak Co., 933 F.2d 124, 127 (2d Cir. 1991); see Orange Env't, Inc. v. County of Orange, 923 F. Supp. 529, 538-39 (S.D.N.Y. 1996).

Turning to the merits of this issue, Comfort Lake argues there are material fact questions whether store construction is complete and the NPDES permit terminated. However, Comfort Lake has no evidence to contradict the Stipulation Agreement recitals to this effect. Therefore, it has not met its burden to rebut the factual underpinnings of a well-supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Comfort Lake further argues Dresel and Fain wrongfully procured the permit's termination by misstating that the construction

site was properly stabilized.  But there is no record support for this contention.[3] Moreover, because the permit expressly provided that it would not

-----

[3]We deny Comfort Lake's motion to supplement the record on appeal with additional documents relating to permit termination because these documents, if relevant, should have been placed in the district court record.  See Crawford v. Runyon, 79 F.3d 743, 744 (8th Cir. 1996).

terminate until "the site has undergone final stabilization," MPCA obviously concluded in April 1996 that such stabilization had been achieved.

Finally, Comfort Lake argues that permit termination did not moot its claim for injunctive relief because Dresel and Fain constructed three settling ponds that are discharging pollutants into Comfort Lake and its tributaries without an NPDES permit, and because Dresel and Fain are likely to violate their umbrella NPDES permit at other construction sites. The answer to this contention is that these issues are not proper subjects of the lawsuit because Comfort Lake's notice of intent to sue referenced only the alleged permit violations discussed in MPCA's December 20, 1994, warning letter, violations relating to the Wal-Mart store construction. A citizen suit is limited to violations that are closely related to and of the same type as the violations specified in the notice of intent to sue. See Public Interest Research Group of N.J., Inc. v. Hercules, Inc., 50 F.3d 1239, 1250 (3d Cir. 1995); 40 C.F.R. § 135.3.

### III. Is the Claim for Civil Penalties Precluded?

Comfort Lake's complaint asked the court to impose civil penalties of $25,000 per day for each Clean Water Act violation. Contending that Dresel and Fain's payment of $12,203 in civil penalties under the MPCA Stipulation Agreement is an insufficient sanction for their permit violations, Comfort Lake argues that its claim for civil penalties should be allowed to proceed even if its claim for injunctive relief is moot. When a claim for injunctive relief becomes moot, a related claim for money relief is not mooted "as long as the parties have a concrete interest, however small, in the outcome of the litigation." Ellis v. Brotherhood of Ry., Airline & S.S. Clerks, 466 U.S. 435, 442 (1984).

A Clean Water Act citizen suit, including any claim for civil penalties, must be based upon on-going violations, "that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Gwaltney, 484 U.S. at 57. Despite this limitation, a number of circuits have concluded that, even if a polluter's *voluntary* permanent cessation of the alleged violations moots a citizen suit claim for injunctive relief, it does not moot a related claim for civil penalties. See Atlantic States Legal Found., Inc., v. Stroh Die Casting Co., 116 F.3d 814, 820 (7th Cir. 1997); Natural Resources Defense Council v. Texaco Ref. & Mktg., Inc., 2 F.3d 493, 502-03 (3rd Cir. 1993); Atlantic States Legal Found. v. Tyson Foods, Inc., 897 F.2d 1128, 1135 (11th Cir. 1990); Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., 890 F.2d 690, 696-97 (4th Cir. 1989). We agree with these decisions. Congress has granted the citizen suit plaintiff standing to seek civil penalties as well as injunctive relief against on-going violations. See 33 U.S.C. §§ 1319(d) and 1365(a). Plaintiff retains "a concrete interest" in enforcing its penalties claim, even if any penalties recovered from the polluter go to the United States Treasury. When there is no agency enforcement action in the picture, a polluter should not be able to avoid otherwise appropriate civil penalties by dragging the citizen suit plaintiff into costly litigation and then coming into compliance before the lawsuit can be resolved.

However, this is not a case of voluntary compliance mooting the citizen suit's claim for injunctive relief. Here, the on-going violations alleged in Comfort Lake's complaint are moot because of subsequent MPCA enforcement actions that terminated the NPDES permit and assessed Dresel and Fain civil penalties for past violations. The Second Circuit addressed a similar situation in two cases. In Eastman Kodak, the state agency extracted $2,000,000 in criminal fines and civil penalties from the polluter. The Second Circuit held that the citizen suit "may not revisit the terms of a settlement reached by competent state authorities" absent proof of a realistic prospect that the alleged violations "will continue notwithstanding the settlement." 933 F.2d at 127. But in Atlantic States Legal Found., Inc. v. Pan American Tanning Corp., 993 F.2d 1017, 1022 (2d Cir. 1993), the court held that a citizen suit claim for civil penalties was

neither moot nor precluded when the polluter's settlement with a local agency involved a fine of only $6,600 and "did not cover all of the violations plaintiffs allege."

These Second Circuit cases confirm that the problem here is not mootness. Because Comfort Lake satisfied Gwaltney's on-going violation test when its complaint was filed, there remains an actual controversy over its claim for civil penalties for these violations. Rather, the issue is what effect Dresel and Fain's settlement with MPCA has on that claim for civil penalties. Or, to state the question differently, may Comfort Lake collaterally attack MPCA's decision that civil penalties of $12,203 are appropriate *for the very same violations alleged in the citizen suit*. Neither Eastman Kodak nor Pan American Tanning provides a standard for answering that question. Therefore, we return for guidance to the basic structure of the Clean Water Act.

An underlying principle of the Clean Water Act is that "the citizen suit is meant to supplement rather than to supplant" government enforcement action. Gwaltney, 484 U.S. at 60. For example, if EPA or MPCA commences a court enforcement action before or within sixty days after a citizen suit plaintiff's notice of intent to sue, the citizen suit is completely barred. See 33 U.S.C. § 1365(b)(1)(B). Even when an agency enforcement action is not commenced until after the citizen suit, final judgment in the agency's court action will be a res judicata or collateral estoppel bar to the earlier citizen suit. See United States EPA v. City of Green Forest, 921 F.2d 1394, 1402-05 (8th Cir. 1990), cert. denied, 502 U.S. 956 (1991).

In addition to court enforcement actions, EPA and many state agencies have statutory authority to proceed by formal administrative action. When EPA "has commenced and is diligently prosecuting" such an administrative action under 33 U.S.C. § 1319(g), or when MPCA has commenced and is diligently prosecuting "an action under a State law comparable to this subsection," a subsequent citizen suit for civil penalties is barred. 33 U.S.C. § 1319(g)(6). In its initial ruling, the district court held that MPCA's December 1994 non-compliance letter and its February 1995 Notice

of Violation did not "commence" an administrative enforcement action, and therefore Comfort Lake's citizen suit was not wholly barred by § 1319(g)(6) (a cross appeal issue we decline to consider). The Stipulation Agreement between MPCA and Dresel and Fain is not a res judicata or collateral estoppel bar, like the judicially approved consent decree in Green Forest. But as a final agency enforcement action, that Agreement is entitled to considerable deference if we are to achieve the Clean Water Act's stated goal of preserving "the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution." 33 U.S.C. § 1251(b). Moreover, respondents like Dresel and Fain will be disinclined to resolve disputes by such relatively informal agreements if additional civil penalties may then be imposed in pending citizen suits, thereby depriving MPCA of this resource-conserving enforcement tool.[4] For these reasons, we conclude that an administrative enforcement agreement between EPA or MPCA and the polluter will preclude a pending citizen suit claim for civil penalties if the agreement is the result of a diligently prosecuted enforcement process, however informal.

In this case, MPCA began informal action to enforce the NPDES permit in December 1994, before Comfort Lake issued its notice of intent to sue for the same violations. The agency diligently pursued Dresel and Fain to end permit violations until

---

[4]The Supreme Court in Gwaltney raised a similar concern in concluding that citizen suits may not challenge past violations:

> Suppose that the [EPA] Administrator . . . agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not be obliged to take. If citizens could file suit, months or years later, in order to seek the civil penalties that the Administrator chose to forego, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably. The same might be said of the discretion of state enforcement authorities. 484 U.S. at 61

May 1995, when it concluded compliance had been achieved. After construction was complete, MPCA terminated the permit and negotiated stipulated penalties for past violations. As the district court noted, MPCA extracted a civil penalty that "exceeds penalties imposed in similar cases [and] was derived by looking at factors substantially similar to those which must be considered by a court imposing penalties under" the Clean Water Act. Because MPCA diligently prosecuted its enforcement demands, the civil penalties it elected to extract in settling those demands may not be reconsidered in this citizen suit. While Comfort Lake might have preferred more severe civil penalties, MPCA has the primary responsibility for enforcing the Clean Water Act.

### IV. Should Attorney's Fees Have Been Awarded?

Although Comfort Lake's claims for affirmative relief are foreclosed by the subsequent MPCA enforcement actions, Comfort Lake may still be entitled to an award of costs and a reasonable attorney's fee as a prevailing party under 33 U.S.C. § 1365(d) if its citizen suit was the catalyst for agency enforcement action that resulted in the cessation of Clean Water Act violations. See Eastman Kodak, 933 F.2d at 128; Green Forest, 921 F.2d at 1402. However, the district court determined that Comfort Lake was not a catalyst, both because MPCA began enforcing the permit before Comfort Lake's notice of intent to sue, and because Comfort Lake "actually impeded" agency enforcement by suing MPCA in state court and then actively opposing the proposed Stipulation Agreement. This finding of fact is not clearly erroneous. See Shipman v. Missouri Dept. of Family Servs., 877 F.2d 678, 682 (8th Cir. 1989) (standard of review), cert. denied, 493 U.S. 1045 (1990). The finding is well supported by the affidavit of MPCA's supervisor in charge of enforcing the NPDES permit, who averred that Comfort Lake impeded and delayed the enforcement process and that "MPCA's enforcement actions would have been the same even in the absence of a citizen's suit by the Comfort Lake Association, except that the enforcement actions would have been completed sooner." Because Comfort Lake was not a prevailing party, the district court properly denied its request for costs and attorney's fees. The question whether

Dresel and Fain may depose Comfort Lake's attorney on attorney's fee issues is therefore moot.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.