MISSISSIPPI RIVER REVIVAL, INC., West Side River Watch, Inc., and Mississippi Corridor Neighborhood Coalition, Inc., Plaintiffs,

v.

The CITY OF MINNEAPOLIS, MN, Defendant.

Mississippi River Revival, Inc., West Side River Watch, Inc., and Mississippi Corridor Neighborhood Coalition, Inc., Plaintiffs,

v.

The City of St. Paul, MN, Defendant.

No. Civ. 99–1596 DDA/FLN, Civ. 99–1597 DDA/FLN.

United States District Court, D. Minnesota.

May 2, 2001.

Richard Brian Bates, Bates Law Office, St. Paul, Minnesota, for Mississippi River Revival, West Side River Watch, Inc., in Nos. 99–1596 and 99-1597, Mississippi Corridor Neighborhood Coalition, Inc. in No. 99–1596.

Friedrich Anson Paul Siekert, Robert Michael Small, U.S. Atty., Minneapolis, MN, R Justin Smith, US Dept of Justice, Washington, DC, for U.S. in Nos. 99–1596 and 99-1597.

Friedrich Anson Paul Siekert, U.S. Atty., Minneapolis, MN, David S. Gualtieri, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Reginald Pallesen, US Environmental Protection Agency, Chicago, IL, for Environmental Protection Agency in Nos. 99–1596 and 99-1597.

Corey M. Conover, Carol E Lansing, Minneapolis City Attorney, Minneapolis, MN, for City of Minneapolis in No. 99-1596.

Frank E Villaume, III, Peter G. Mikhail, St. Paul City Attorney, St. Paul, MN, for City of St. Paul in No. 99-1597.

## ORDER DISMISSING CASES

ALSOP, Senior District Judge.

■ Standing and mootness are jurisdictional issues that must be addressed prior to consideration of the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The threshold question in these citizen suits under the Clean Water Act ("CWA"), 33 U.S.C. § 1365, is whether a citizen plaintiff's claim to assess civil penalties payable to the U.S. Treasury is moot when a change in circumstances indicates that the defendant is reasonably unlikely to commit future CWA violations. Supreme Court precedent indicates that it is, and these cases accordingly will be dismissed as moot.

### I.

The Defendants, the Cities of Minneapolis and St. Paul (collectively "the Cities"), have had storm drainage systems in place since the nineteenth century. These systems serve to prevent inconvenient surface accumulations of water from rain and melted snow and to direct that water through various channels into the Mississippi River. As water moves into and through the storm drainage systems, it carries with it a number of pollutants with which it comes in contact, including lawn fertilizers, petroleum byproducts, animal waste, and garbage. Pollutants contained in the Cities' storm water discharges have contributed over time to a decline in the environmental quality of some sections of the Mississippi River. Plaintiffs, organizations devoted to improving the natural environment of the Mississippi River and related waterways, claim that the Cities' storm water discharges have impaired their members' aesthetic and recreational interests in these polluted areas.

Water flows in the Cities' storm drainage systems whenever rain falls or snow

melts, and the Cities as a practical matter cannot turn their storm drainage systems off in order to eliminate storm water discharges. The Cities' storm water discharges nevertheless are subject to the National Pollution Discharge Elimination System ("NPDES") permitting requirements of the CWA, 33 U.S.C. § 1342(p), and the CWA strictly prohibits such discharges unless the discharger is "in compliance with" the NPDES requirements. *Id.* at § 1311(a). The Cities in or about November 1992 timely applied to the Minnesota Pollution Control Agency ("MPCA")[1] for NPDES permits setting conditions that would allow the Cities' periodic storm water discharges to comply with the CWA. The MPCA is required by law to take action on completed NPDES permit applications within one year. 40 C.F.R. § 122.26(e)(7)(ii). Despite that timetable, the MPCA placed the Cities' applications low on its list of priorities and let those applications languish for several years without taking final action. In August 1999, Plaintiffs gave notice to the Cities and to the EPA and MPCA of Plaintiffs' intent to bring citizen suits alleging that the Cities were discharging storm water without NPDES permits in violation of the CWA. Plaintiffs' notice failed to provoke any governmental action, and Plaintiffs duly commenced these lawsuits in October 1999. On December 1, 2000, as the remaining parties were briefing motions for summary judgment, the MPCA issued final NPDES permits to the Cities.[2]

Plaintiffs originally sought declaratory and injunctive relief along with the assessment of civil penalties against the Cities and an award of attorney fees and costs, all of which are allowed in CWA citizen suits. 33 U.S.C. § 1365(a). Plaintiffs acknowledge that the MPCA's issuance of NPDES permits renders their request for injunctive relief moot, and no evidence in the record supports an inference that the Cities are likely to violate the terms of their NPDES permits now that they have received them.[3] Plaintiffs argue, however, that they remain entitled to a declaration that the Cities violated the CWA in the past, to the assessment of civil penalties for those past violations, and to an award of litigation costs. The Cities claim that these cases are moot as to all forms of relief Plaintiffs request.[4]

1. The United States Environmental Protection Agency ("EPA"), which is charged with enforcing the CWA, transferred its enforcement authority in Minnesota to the MPCA in 1974 in accordance with the CWA's regulatory scheme. 33 U.S.C. § 1342(b). The Plaintiffs named the EPA as a defendant, and the Court earlier granted the EPA's motion to dismiss because the EPA after the transfer of authority no longer had a duty to administer the NPDES permitting program applicable to the Cities. *Mississippi River Revival, Inc. v. Adm'r, U.S. Envtl. Prot. Agency*, 107 F.Supp.2d 1008, 1013 (D.Minn.2000). The MPCA does have such a duty, but neither Plaintiffs nor the Cities have attempted to join the MPCA as a party.

2. The Court notes that Plaintiffs have challenged certain aspects of the NPDES permits in state court. *Mississippi River Revival, Inc. v. Minnesota Pollution Control Agency*, No.

C1–01–23 (Minn.Ct.App. filed Jan. 4, 2001). The issues raised in the state court action have no bearing upon this Court's continued jurisdiction over the CWA citizen suits.

3. The record, in fact, supports the opposite conclusion. The MPCA issued draft storm water permits to the Cities, and Plaintiffs have not shown that the Cities violated the terms of those permits. Furthermore, uncontradicted affidavits from the Cities' engineers indicate that the Cities, with some degree of success, have taken substantial measures to reduce the adverse environmental effects of their storm water discharges.

4. The Cities also claim that Plaintiffs lacked standing to bring citizen suits in the first instance. For purposes of this discussion, the Court assumes without deciding that Plaintiffs had initial standing. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67,

## II.

■ A case becomes moot if the court no longer can grant relief that will redress an injury the plaintiff claims. *Steel Co.*, 523 U.S. at 103, 118 S.Ct. 1003. In these cases, Plaintiffs' requests for declaratory relief and an award of litigation costs have no bearing on mootness because neither of those requests standing alone will support a cause of action. Now that the Cities have received NPDES permits, a declaration that the Cities' lack of those permits violated the CWA would not compel any additional action on the part of the Cities and therefore would do nothing to redress Plaintiffs' injuries.[5] The possibility of an award of attorney fees and costs also is insufficient in itself to establish a case or controversy under Article III. *Steel Co.*, 523 U.S. at 107, 118 S.Ct. 1003 ("a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit"). The continued vitality of these cases, then, depends upon whether the assessment of civil penalties against the Cities will provide effective redress for Plaintiffs.

■ The concept of "redress" in this context is complicated by the unusual nature of the CWA civil penalty provision. The CWA civil penalty provision is unusual in that such penalties are payable to the U.S. Treasury, not to Plaintiffs, and Plaintiffs accordingly would receive no financial benefit from the imposition of civil penalties against the Cities. The assessment of civil penalties provides redress to CWA citizen plaintiffs, then, only to the extent that civil penalties "encourage defendants to discontinue current violations and deter

them from committing future ones." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 186, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). If deterrence is the sole purpose underlying civil penalties, it follows that a claim to assess civil penalties is moot if civil penalties no longer will deter the defendant from violating the CWA. *See id.* (recognizing that "there may be a point at which the deterrent effect of a claim for civil penalties becomes so insubstantial or so remote that it cannot support citizen standing").

This conclusion is consistent with other limitations on the scope of CWA citizen suits. For example, CWA citizen plaintiffs may not seek civil penalties for entirely past violations because CWA citizen suits are "meant to supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Although governmental enforcement agencies may seek penalties for any past or present CWA violation, 33 U.S.C. § 1319, the supplemental nature of CWA citizen suits allows citizen plaintiffs to assess civil penalties only for violations that are ongoing when suit is commenced. *Id.* at 59, 108 S.Ct. 376. For similar reasons, a CWA citizen suit is moot if the government in a separate proceeding assesses civil penalties for the violations the citizen plaintiffs allege and takes appropriate steps to ensure that those violations have ceased and will not recur. *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 356 (8th Cir. 1998); *Atl. States Legal Found., Inc. v.*

---

117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (allowing a court to assume standing in order to analyze mootness).

5. Plaintiffs argue that, even if a declaratory judgment would have no meaningful effect upon the Cities, a judicial finding of a CWA violation would have an impact on the con-

duct of other municipalities subject to the NPDES permitting requirements and would benefit Plaintiffs for that reason. This argument fails because a generalized interest in deterring the conduct of third parties not before the Court cannot provide standing to sue. *Steel Co.*, 523 U.S. at 108–09, 118 S.Ct. 1003.

*Eastman Kodak Co.*, 933 F.2d 124, 125 (2nd Cir.1991). Like *Laidlaw,* these decisions suggest that the prospective and supplementary role of a CWA citizen suit is complete, and that a claim to assess civil penalties is moot, if the court finds that the defendant has ceased violating the CWA and is reasonably unlikely to violate the CWA in the future.

A number of courts in other jurisdictions, however, have held that a CWA citizen plaintiff's claim to assess civil penalties is not moot regardless of the likelihood of future violations by the defendant.[6] *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997); *Natural Res. Def. Council, Inc. v. Texaco Ref. and Mktg., Inc.*, 2 F.3d 493, 503 (3rd Cir.1993); *Atl. States Legal Found., Inc. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1021 (2nd Cir.1993); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir.1990); *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir.1989). The primary argument made in support of that position is that a defendant's liability for civil penalties is mandatory and attaches at the time of the CWA violation. *See, e.g., Pan Am.*, 993 F.2d at 1020 (citing the CWA, 33 U.S.C. § 1319(d), which states that a CWA violator "shall" be subject to civil penalties). A secondary argument is that holding otherwise "would

weaken the deterrent effect of the [CWA] by diminishing incentives for citizens to sue and encourage dilatory tactics by defendants." *Texaco*, 2 F.3d at 503–04 (footnote and citation omitted). These arguments are problematic in that they are inconsistent with the Supreme Court's view of the role of the CWA citizen suit and with the Supreme Court's discussion of mootness in *Laidlaw.*

It is undoubtedly true that a defendant is potentially liable for civil penalties at the time the defendant violates the CWA. That observation is not relevant in analyzing mootness, however, because the appropriate question is not whether the defendant may be held liable; the appropriate question instead is whether the plaintiff is in a position to enforce the law imposing liability. According to traditional principles of mootness, a plaintiff ceases to be in that position when, as here, no meaningful relief from the court remains available to the plaintiff. *Laidlaw* makes clear that the burden of establishing mootness is heavy and rests on the defendant, 528 U.S. at 189, 120 S.Ct. 693, but if the defendant successfully bears that burden in an extraordinary case, there is no reason to create an exception for CWA citizen suits claiming civil penalties.[7] Allowing a finding of mootness may allow a polluter to avoid liability for civil penalties in a CWA

---

6. According to the Eighth Circuit, these decisions stand for the limited proposition that a defendant's voluntary cessation of illegal conduct will not moot a CWA citizen plaintiff's claim to assess civil penalties. *Comfort Lake,* 138 F.3d at 356. The Cities compliance with the CWA, however, was not "voluntary" because the Cities had no control over the issuance of NPDES permits, and *Comfort Lake* for that reason is not controlling. A fair reading of the cited decisions supports the more broad proposition that a CWA citizen plaintiff's claim to assess civil penalties never will become moot so long as that claim was properly asserted at the time the citizen suit was

commenced. No authority in this jurisdiction has endorsed that more expansive rule.

7. Since *Laidlaw* was decided, the Ninth Circuit has joined the jurisdictions holding that liability for civil penalties under the CWA attaches "at the time the violations occur." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir.2000) (citations omitted). The Ninth Circuit in *Pac. Lumber*, however, also held on the facts before it that civil penalties would serve to deter future violations by the defendant, which distinguishes *Pac. Lumber* from the cases at issue here.

citizen suit, but that does not mean a polluter may avoid liability entirely. The government remains free to seek civil penalties for all past CWA violations even if a CWA citizen suit is dismissed as moot, and in the CWA's enforcement scheme as interpreted by the Supreme Court the government is the proper party to seek remedies for past violations.

The other policy concerns related to CWA citizen plaintiffs' claims to assert civil penalties also are unwarranted. Recognizing that a claim to assess civil penalties may become moot will not reduce incentives for CWA citizen plaintiffs. The actual incentives for bringing CWA citizen suits are the deterrent effect of civil penalties and other relief on a defendant's conduct along with the possibility of recovering litigation costs. A dismissal for mootness is predicated on the assumption that a defendant has ceased violating the CWA permanently, so in such a case neither civil penalties nor any other remedy available under the CWA will have additional deterrence value for citizen plaintiffs. CWA citizen plaintiffs also will not lose any financial incentive to bring suit, and a defendant will not have an incentive to engage in dilatory tactics, because a finding of mootness does not prevent the court from awarding litigation costs to citizen plaintiffs in appropriate cases. *Comfort Lake*, 138 F.3d at 357; *Eastman Kodak*, 933 F.2d at 128.

The Court therefore holds that the same rules of mootness apply to all forms of relief available in CWA citizen suits, including claims to assess civil penalties.[8]

The Cities as a result of independent governmental action received NPDES permits bringing the Cities into compliance with the CWA, and the Court finds on these facts that the Cities are reasonably unlikely to violate those NPDES permits in the future. Although Plaintiffs have the right to bring later citizen suits against the Cities if the Cities violate the NPDES permits, no relief remaining available under the CWA will deter the Cities from discharging storm water without a permit, which is the violation Plaintiffs allege in these cases.

### III.

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Plaintiffs' citizen suit against the City of Minneapolis, Civil No. 99–1596 DDA/FLN, is DISMISSED as moot.

2. The Plaintiffs' citizen suit against the City of St. Paul, Civil No. 99–1597 DDA/FLN, is DISMISSED as moot.

---

8. At least two other district courts have reached the same result. *See Cmtys. for a Better Env't v. Tosco Ref. Co., Inc.*, No. C 00–0248 SI, 2001 WL 114441 at *7 (N.D.Cal. Jan. 25, 2001) (holding that post-complaint events may moot a claim for civil penalties); *Dubois v. U.S. Dept. of Agric.*, 20 F.Supp.2d 263, 268 (D.N.H.1998) (holding claim for civil penalties moot when those penalties would not serve to deter future violations by the defendant).