# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2511

_____

|  |  |  |
|---|---|---|
| Mississippi River Revival, Inc.; West Side River Watch, Inc.; Mississippi Corridor Neighborhood Coalition, Inc., | * * * * | |
| Plaintiffs - Appellants, | * * | |
| v. | * * | Appeal from the United States District Court for the |
| City of Minneapolis, Minnesota; City of St. Paul, Minnesota, | * * * | District of Minnesota. |
| Defendants - Appellees, | * * | |
| United States of America, | * * | |
| Intervenor on Appeal. | * | |

_____

Submitted: October 10, 2002

Filed: February 7, 2003

_____

Before LOKEN, BEAM, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Three environmental organizations brought citizen suits against the Cities of Minneapolis and St. Paul alleging that the Cities were violating the Clean Water Act by discharging storm waters through their storm sewer systems without required

permits. After the Minnesota Pollution Control Agency (MPCA) issued storm water permits, the district court[1] dismissed the complaints as moot, including plaintiffs' claims for civil penalties. Miss. River Revival, Inc. v. City of Minneapolis, 145 F. Supp. 2d 1062, 1065-67 (D. Minn. 2001). The court also denied plaintiffs' motion to amend their complaints to allege that the new permits do not meet all Clean Water Act requirements. Plaintiffs appeal those rulings. Because the Cities' alternative defense challenged the constitutionality of the Act as applied, the United States has intervened on appeal to support the district court's dismissal. We affirm.

## I.

The Clean Water Act prohibits the discharge of any pollutant from a point source into navigable waters unless the discharge complies with the terms of an NPDES permit. See 33 U.S.C. §§ 1311(a), 1342; City of Milwaukee v. Illinois, 451 U.S. 304, 310-11 (1981).[2] NPDES permits establish discharge conditions aimed at maintaining the chemical, physical, and biological integrity of the Nation's waters. See 33 U.S.C. § 1251(a); EPA v. California ex rel. State Water Res. Control Bd., 426 U.S. 200, 202-09 (1976). For point sources located in the State of Minnesota, the Environmental Protection Agency (EPA) has delegated its NPDES permitting authority to the MPCA. See 33 U.S.C. § 1342(c); 39 Fed. Reg. 26,061 (July 16, 1974); Minn. Stat. § 115.03, subd. 5.

In the Water Quality Act of 1987, Congress amended the Act to require that cities obtain NPDES permits for their separate storm sewer systems. See Pub. L. No. 100-4, 101 Stat. 7, codified at 33 U.S.C. § 1342(p). The amendment established

---

[1]The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota.

[2]NPDES is an acronym for the National Pollutant Discharge Elimination System.

deadlines by which permitting agencies "shall issue or deny each such permit" to cities of various sizes. See § 1342(p)(4). The Cities completed filing timely NPDES storm water permit applications with the MPCA in 1992 and 1993, but the MPCA failed to issue or deny storm water permits within the one year required by the applicable EPA regulation. See 40 C.F.R. § 122.26(e)(7)(ii)-(iii). Not surprisingly, rain and snow continued to fall, resulting in continuing storm water discharges into the Cities' storm sewer systems. The Cities paid the annual permit fees to the MPCA while their permit applications were pending.

Frustrated by the lengthy permitting delay, plaintiffs filed these suits in October 1999 after giving the Cities and the EPA notice of their intent to bring citizen suits under the Clean Water Act. See 33 U.S.C. § 1365(a). Plaintiffs named the Cities and the EPA as defendants but did not join the MPCA. Plaintiffs alleged the Cities were violating the Act by discharging without a permit and the EPA was violating the Act by failing to issue or deny permits within the statutory deadlines. Plaintiffs sought a declaratory judgment, injunctive relief, civil penalties, and an award of costs, attorney's fees, and expert witness fees.

The district court initially dismissed the EPA on the ground that citizen suits may only challenge the agency's failure to perform non-discretionary duties, see 33 U.S.C. § 1365(a)(2), and the EPA has delegated its permitting duty to the MPCA. Miss. River Revival, Inc. v. EPA, 107 F. Supp. 2d 1008, 1013 (D. Minn. 2000). However, the court criticized the EPA and the MPCA for the unexplained six-year permitting delay. It denied St. Paul's motion to dismiss for failure to state a claim but invited the Cities to seek summary judgment under the liability standard articulated by the Eleventh Circuit in Hughey v. JMS Dev. Corp., 78 F.3d 1523 (11th Cir. 1996). 107 F. Supp. 2d at 1014-15 & n.5. A few months later, the MPCA issued NPDES storm water permits to the Cities, and the parties filed cross motions for summary judgment. Plaintiffs also filed their motion to amend, which was untimely under the

court's pretrial scheduling order. The district court then issued the rulings at issue on appeal.

## II.

The Clean Water Act violations alleged in plaintiffs' complaint were the Cities' continuing discharge of storm waters without NPDES storm water permits. Because permits have now issued, plaintiffs concede that their initial claims for injunctive and declaratory relief are moot. When the plaintiff prevails in a Clean Water Act citizen suit, the district court may "apply any appropriate civil penalties." 33 U.S.C. § 1365(a). Therefore, plaintiffs argue that the Cities are liable for civil penalties for discharging without permits and that these claims are not moot. The Cities and the United States as intervenor respond that plaintiffs' civil penalty claims are moot under the standard adopted by the Supreme Court in Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 189-94 (2000). We agree.

The Clean Water Act "does not permit citizen suits for wholly past violations." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 64 (1987). Indeed, citizen suit plaintiffs lack Article III standing to recover civil penalties for past violations because the payment of money to the United States Treasury does not redress any injury to them caused by the violations. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 106-07 (1998). In Laidlaw, limiting the no-standing rule of Steel Co. to claims for past violations, the Court held that citizen suit plaintiffs do have standing to seek civil penalties for continuing and future violations because "[t]o the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct." 528 U.S. at 186. However, the Court explained, such a claim is moot "if subsequent events [during the pendency of the lawsuit] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 189 (quotation omitted).

In support of their mootness argument, plaintiffs first posit that civil penalties "attach irrevocably to a violator at the time of the violation," and therefore it is "irrelevant whether, at this time, there is no likelihood that the Cities will commit any future violations." This contention simply ignores the above-quoted mootness standard adopted by the Supreme Court in Laidlaw. The Clean Water Act authorizes the EPA to seek civil penalties for past violations, and such a claim would not be mooted by the defendant's subsequent compliance. See Gwaltney, 484 U.S. at 58. But the Act limits citizen suit plaintiffs to remedies that will redress ongoing and future injury, so the Laidlaw mootness standard applies.[3]

Alternatively, plaintiffs argue that the Cities have not met their heavy burden of establishing mootness under Laidlaw because the Cities are already violating their storm water permits. Therefore, it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." This contention ignores the limited nature of plaintiffs' claims. The only violations alleged were the Cities' discharges without a permit. There is no evidence that discharges without a permit will resume and overwhelming evidence to the contrary. The Cities timely filed their storm water permit applications and are not alleged to have hindered the MPCA's review of those applications. Thus, the failure to issue permits within the deadlines established by Congress was caused solely by the MPCA's delay in acting. The MPCA has now issued permits. Though the permits have expiration dates, the Cities

_____

[3]In Laidlaw, the Court quoted United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968), for its mootness standard, a case that involved a claim for injunctive relief. Traditionally, claims for money damages have not been mooted by subsequent events that mooted companion claims for injunctive relief. Prior to Laidlaw, a number of circuits had applied this principle in holding that citizen suit claims for civil penalties were not mooted by the defendant's subsequent compliance. See Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc., 138 F.3d 351, 355-56 (8th Cir. 1998), and cases cited. In our view, Laidlaw has overruled these decisions, at least in part, by equating citizen suit claims for civil penalties and claims for injunctive relief for mootness purposes.

have a public duty to operate their storm sewer systems, and the Clean Water Act requires the MPCA (or the EPA) to issue storm water permits. We refuse to speculate that these public bodies will allow the resumption of discharges without a permit. Cf. Minn. R. 7001.0160. Thus, the only violations alleged by plaintiffs cannot reasonably be expected to recur.

In addition, plaintiffs argue that claims for civil penalties cannot be moot because "penalties punish a polluter for violating the law." We doubt this argument affects the mootness analysis under Laidlaw. Instead, it goes to the merits of plaintiffs' claim for civil penalties, assuming that claim is not moot. But even if the argument is relevant to the issue of mootness, we conclude it is without merit. The Clean Water Act provides that, "[i]n determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d).

The Cities complied with their storm water permit obligations by timely filing permit applications. The MPCA caused the violations alleged by plaintiffs when it failed to act on the permit applications. Assuming without deciding that the Cities were then in technical violation of § 1342(p), the appropriateness of assessing civil penalties under § 1319(d) is far different here than in cases that have considered whether industrial or commercial point source operators should be held absolutely liable for permitting delays attributable to the permitting agency. Compare Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546 (5th Cir. 1996), with Driscoll v. Adams, 181 F.3d 1285 (11th Cir. 1999), and Hughey v. JMS Dev. Corp., 78 F.3d 1523 (11th Cir. 1996). In those cases, the polluters had the alternative of not discharging until the NPDES permit issued, and they benefitted economically from continuing to discharge without a permit.

Here, on the other hand, the Cities operate extensive storm water sewer systems containing hundreds of miles of storm sewers and thousands of catch basins and storm water outfalls. The Cities cannot stop rain and snow from falling and cannot stop storm waters carrying "pollutants" such as sediment and fertilizer from running downhill and draining into the Mississippi River.[4] If the Cities do nothing, storm waters will flow into their sewer systems. On the other hand, any attempt to prevent discharge through established storm drains would, according to affidavits submitted by the Cities' experts, harm public health and the environment. Indeed, under Minnesota law the Cities have an affirmative duty to keep their sewer systems in good repair and free from obstructions. See Pettinger v. Village of Winnebago, 58 N.W.2d 325, 329 (Minn. 1953). Thus, unlike industrial and commercial point source operators, the Cities simply could not stop the unpermitted discharges.

In these circumstances, if these lawsuits had been filed by the EPA or the MPCA, it would be inequitable, to say the least, to order the taxpayers of Minneapolis and St. Paul to pay monetary penalties to the United States Treasury because these federal and state agencies failed to make timely permitting decisions. Because a Clean Water Act citizen suit "is meant to supplement rather than to supplant governmental action," Gwaltney, 484 U.S. at 60, we likewise conclude that plaintiffs could not obtain an award of civil penalties as a matter of law. Plaintiffs chose not to sue the MPCA under § 1365(a)(2) for failure to perform its arguably non-discretionary duty to act on the Cities' storm water permit applications in timely fashion. Plaintiffs are not now entitled to an award of civil penalties because they chose to sue only the Cities, who were guilty at most of technical and unavoidable violations in discharging without storm water permits.

---

[4]The Clean Water Act broadly defines the term "pollutant" to include, for example, chemical wastes, biological materials, sand, and cellar dirt. See 33 U.S.C. § 1362(6). The Cities concede that storm water run-off will necessarily contain "pollutants" as defined by the Act.

**III.**

Finally, plaintiffs argue that the district court erred in denying their motion for leave to amend their complaints to assert claims for injunctive relief based upon alleged violations contained in the Cities' new NPDES permits. We disagree. The court did not abuse its discretion in denying the motion to amend as untimely under the court's pretrial scheduling order. Moreover, the claims asserted in the proposed amended claims were defective because they went far beyond the notices plaintiffs were required to give prior to commencing these citizen suits. See 40 C.F.R. § 135.3(a); Save Our Health Org. v. Recomp of Minn., Inc., 37 F.3d 1334, 1337-38 (8th Cir. 1994). Finally, as the district court noted, the Minnesota Court of Appeals has held that the Cities' new storm water permits comply with federal and state law, so the proposed amended claims as pleaded would be futile. See Miss. River Revival, Inc. v. MPCA, No. C1-01-23 (Minn. App. July 31, 2001).

The judgment of the district court is affirmed. Plaintiffs' motion to supplement the record on appeal is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.