### In re SOUTHDOWN, INC., Litigation.

#### No. C–3–93–270.

United States District Court,
S.D. Ohio,
Western Division.

March 27, 2001.

Robert J. Shostak, Athens, OH, Jeffrey A. Kodish, Boulder, CO, for plaintiffs.

Frank L. Merrill, Christopher C. Woods, Columbus, OH, Jacob A. Myers, Dayton, OH, Quintin F. Lindsmith, Columbus, OH, David L. Smiga, Pittsburgh, PA, for defendants.

RICE, Chief Judge.

Plaintiff, Greene Environmental Coalition, Inc. ("Plaintiff" or "GEC"), has brought this lawsuit against Defendant, Southdown, Inc. ("Southdown"), under the citizen suit provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. When this litigation was initiated, Southdown owned a tract of land within Greene and Clark Counties, Ohio, on which a large landfill is located. In its Complaint, GEC alleged that Southdown has discharged and continues to discharge pollution from that landfill into Mud Run Creek, without having obtained a permit as required by the CWA. GEC alleges that it is a non-profit corporation, comprised of citizens who reside or recreate near Mud Run Creek, in the vicinity of the area where Southdown is discharging pollutants without the requisite permit. In its Complaint, GEC requests that the Court declare that Southdown has violated the CWA, enjoin it from future violations of that statute, impose per diem civil penalties upon Southdown pursuant to 33 U.S.C. § 1319(d), and award costs to GEC, including the fees it incurs for attorneys and expert witnesses. Shortly after this lawsuit had been filed, Southdown filed an action against USX Corporation ("USX"), the entity from which it had purchased the land upon which the landfill is located. *Southdown, Inc. v. USX Corporation*, Case No. C-3-93-354 (S.D.Ohio).[1] The two lawsuits were consolidated by this Court, under the above caption. Thereafter, this litigation was stayed for an extended period of time, in order to permit the parties to attempt to resolve their disputes by way of a settlement. Their efforts in that regard failed to bear fruit.

---

1. Southdown has dismissed that suit, without prejudice. *See* Doc. # 53 in Case No. C-3-93-354.

While settlement efforts were ongoing, Southdown transferred the tract of land, upon which the landfill is located, to Dirtvest, Ltd. ("Dirtvest"), and 444 Sandhill, Inc. ("Sandhill"). In response, GEC sought leave to amend its Complaint, to join Dirtvest and Sandhill as Defendants and to assert a claim under Ohio's Fraudulent Conveyances Statute against Southdown and a claim under the CWA against the two to-be-added Defendants. *See* Doc. # 69. In a Decision of January 13, 1999, this Court overruled that motion in its entirety; however, the Court expressly stated that GEC could renew its request to amend in order to join Dirtvest and Sandhill as Defendants.[2] *See* Doc. # 80. In its Decision of March 13, 2000, the Court sustained GEC's Unopposed, Renewed Motion to Join Parties as Defendants and to Amend Complaint (Doc. # 87), thus permitting it to file an amended complaint joining Dirtvest and Sandhill as Defendants and asserting a claim under the CWA against them.[3] *See* Doc. # 88. In that Decision, the Court also sustained in part and overruled in part Southdown's Motion for Summary Judgment (Doc. # 81). In particular, the Court concluded that Southdown was entitled to summary judgment on Plaintiff's prayer for injunctive relief, since it no longer owned the property, but not on its request for the imposition of civil penalties.

This case is now before the Court on Southdown's Motion for Summary Judgment (Doc. # 100). As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to re-

**2.** The Court did not afford GEC the opportunity of reasserting its claim under Ohio's Fraudulent Conveyances Statute, since only "creditors" were permitted to maintain actions under that statute and GEC was not a creditor.

**3.** Since being joined as Defendants, Dirtvest and Sandhill have filed Cross-claims against Southdown and Third–Party Claims against USX.

solve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can ˀ be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958

F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

■ Southdown argues that it is entitled to summary judgment on Plaintiff's request for the imposition of civil penalties,

because the transfer of the landfill to Dirtvest and Sandhill has rendered that request moot.[4] In support of its motion, Southdown places primary reliance upon *Friends of the Earth v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (*"Laidlaw III"*). As an initial matter, the Plaintiff argues that Southdown's motion must be denied because the issues contained therein have already been decided by the Court.[5] Although the Supreme Court had not issued its opinion in *Laidlaw III* when the parties briefed Southdown's previous motion for summary judgment, the Supreme Court decided that case before this Court rendered its Decision of March 13, 2000, and this Court relied upon that Supreme Court opinion in its Decision. Thus, GEC argues that the Court has already resolved the issues raised by South-

down's motion. The Court cannot agree. In its previous motion, Southdown argued that it was entitled to summary judgment on the Plaintiff's request for the imposition of civil penalties, because the members of Plaintiff were without standing to seek such relief. Southdown did not argue, as it does with the motion currently under consideration, that the request for the imposition of civil penalties was moot. Therefore, this Court has not previously ruled upon the mootness issue presented by Southdown's present Motion for Summary Judgment (Doc. # 100).

■ In its Amended Complaint, GEC alleges that Southdown has violated the CWA, by discharging pollutants from the landfill into Mud Run Creek, without having obtained the requisite permit.[6] GEC requests that this Court impose civil penalties upon Southdown,[7] which argues that

4. Southdown also notes that Plaintiff's Amended Complaint (Doc. # 89) contains a request for injunctive relief. As a consequence, Southdown has also moved for summary judgment on that form of relief. In response, Plaintiff states that it is premature for this Court to enter summary judgment on this request. That argument is wholly without merit. In its Decision of March 13, 2000, this Court concluded that Southdown was entitled to summary judgment on Plaintiff's prayer for injunctive relief. *See* Doc. # 88. Plaintiff has not sought reconsideration of that Decision. Although the Court afforded Plaintiff the opportunity of filing an amended complaint, joining Dirtvest and Sandhill as Defendants, that opportunity was not a license to reassert claims which had been previously dismissed on summary judgment. Accordingly, the Court sustains Southdown's Motion for Summary Judgment (Doc. # 100), as it relates to GEC's prayer for injunctive relief.

In addition, Southdown moves for summary judgment on GEC's requests for declaratory relief and an award of costs, including fees for attorneys and expert witnesses. In its Decision of March 13, 2000 (Doc. # 88), this Court agreed with Southdown that if GEC were not entitled to injunctive relief or to pursue its request for the imposition of penalties, it could not maintain its requests for

declaratory relief or such costs. Therefore, if the Court sustains Southdown's motion, as it relates to the imposition of civil penalties, it will enter summary judgment on GEC's requests for declaratory relief and to recover costs. Conversely, if the Court concludes that Southdown is not so entitled to summary judgment, it will decline to enter summary judgment on those requests.

5. Plaintiff also contends that Southdown's motion is barred by principles of *res judicata*. Since final judgment has not been entered in this case, those principles are inapplicable. *See e.g.*, *EEOC v. Frank's Nursery and Crafts*, 177 F.3d 448, 462 (6th Cir.1999) (noting that *res judicata* is applicable when a final judgment has previously been entered).

6. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, except in compliance with other provisions of that statute, including § 402, 33 U.S.C. § 1342. Section 402 allows the discharge of pollutants in accordance with a permit obtained under the National Pollutant Discharge Elimination System.

7. The CWA provides that any person who violates certain sections of that statute "shall

such a request has been rendered moot, by its sale of the property upon which the landfill is located to Dirtvest and Sandhill. GEC has not challenged that Southdown has sold the landfill to Dirtvest and Sandhill.[8] Indeed, such a challenge would have been fruitless. Southdown has previously furnished the affidavit of Daniel Heintz ("Heintz"), its Vice President of Environmental Affairs, wherein he states that the tract of land upon which the landfill is located was sold to Dirtvest and Sandhill. Moreover, copies of the deeds by which that property was transferred to those entities are attached to and authenticated by Heintz' affidavit. Therefore, this Court concludes that Southdown has sold the landfill and turns to the question of whether that transaction renders moot GEC's request that civil penalties be imposed upon Southdown.

██ As is indicated, Southdown bases its argument that the Plaintiff's request for the imposition of civil penalties is moot upon the Supreme Court's decision in *Laidlaw III*. Therein, the plaintiffs alleged that the defendant was violating the CWA and brought suit under § 1365, seeking injunctive relief and the imposition of penalties. After a trial, the District Court concluded that injunctive relief was unwarranted, because subsequent to the filing of the suit, the defendant had come into substantial compliance with the CWA. *Friends*

*of the Earth v. Laidlaw Environmental Services*, 956 F.Supp. 588 (D.S.C.1997) ("*Laidlaw I*"). The District Court did, however, assess a civil penalty of $405,800 against the defendant. *Id.* Although the defendant appealed the assessment of civil penalties, the plaintiffs did not challenge the decision of the District Court to decline to enter injunctive relief. The Fourth Circuit vacated the assessment of penalties, concluding that the failure of the plaintiffs to challenge the District Court's decision to decline to enter injunctive relief had rendered the case moot, because they were without standing to request the District Court to impose civil penalties on the defendant. *Friends of the Earth v. Laidlaw Environmental Services*, 149 F.3d 303 (4th Cir.1998) ("*Laidlaw II*"), *reversed*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). To reach that conclusion, the Fourth Circuit started with the premise that mootness is "the doctrine of standing set in time." 149 F.3d at 306. The appellate court then turned to the question of whether the plaintiffs had standing to seek the imposition of civil penalties (the only remedy available to the plaintiff, since they had not appealed the denial of injunctive relief), focusing exclusively upon the redressability prong of the standing inquiry. The Fourth Circuit concluded that the plaintiffs were without standing, since "civil penalties payable to the government

be subject to a civil penalty not to exceed $25,000 per day for each violation." 33 U.S.C. § 1319(d). Under 33 U.S.C. § 1365(a), a District Court may impose such penalties in an action brought by a citizen. Of course, any civil penalties imposed in a citizen suit must be paid to the Government. *See e.g., Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

8. Plaintiff does suggest in its memorandum opposing Southdown's motion (Doc. # 104) that discovery may reveal agreements between Southdown, on one hand, and Dirtvest

and/or Sandhill, on the other, concerning the obligation of the former to indemnify the latter or to remediate the landfill. Nine months have passed since GEC filed that memorandum. The Plaintiff has not filed an affidavit pursuant to Rule 56(f). In that time, Plaintiff has not attempted to supplement its opposition to Southdown's motion with the discovery about which it speculated. Therefore, the Court does not consider GEC's statement about what discovery may reveal to serve as the basis for its decision on the instant motion.

would not redress any injury Plaintiffs have suffered." *Id.* at 307. Upon further appeal, the Supreme Court reversed, rejecting the Fourth Circuit's conclusion that the plaintiffs were without standing. *Laidlaw III.* The Supreme Court initially noted that the Fourth Circuit had improperly "conflated" the doctrine of standing to initiate a suit with mootness. The Supreme Court concluded that the imposition of civil penalties could redress the plaintiffs' injury and that, therefore, they had standing to request that the District Court impose civil penalties on the alleged violator of the CWA.[9]

Having concluded that the plaintiffs had standing to request the imposition of civil penalties, the *Laidlaw III* Court turned to the question of whether that request was moot:

> The only conceivable basis for a finding of mootness in this case is Laidlaw's voluntary conduct—either its achievement by August 1992 of substantial compliance with its NPDES permit or its more recent shutdown of the Roebuck facility. It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite [v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) ]. "[I]f it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.'" *Id.,* at 289, n. 10 [102 S.Ct. 1070] (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, [73 S.Ct. 894, 97 L.Ed. 1303] (1953)). In accordance with this princi-

ple, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203, [89 S.Ct. 361, 21 L.Ed.2d 344] (1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Ibid.*

528 U.S. at 189, 120 S.Ct. 693. *See also, Id.* at 193, 120 S.Ct. 693 ("The facility closure, like Laidlaw's earlier achievement of substantial compliance with its permit requirements, might moot the case, but— we once more reiterate—only if one or the other of these events made it absolutely clear that Laidlaw's permit violations could not reasonably be expected to recur."). The Supreme Court also concluded that whether Laidlaw's substantial compliance with its permit and/or its shutdown of the polluting facility were sufficient to meet that burden were disputed factual matters which had to be resolved on remand. *Id.*

According to Southdown, it has met that heavy burden by virtue of the fact that it has sold the landfill to Dirtvest and Sandhill. Plaintiff responds by arguing that courts have held that a plaintiff's request for the imposition of civil penalties under the CWA is not rendered moot, by the defendant's subsequent compliance with that statute, as long as the violation was ongoing at the time suit was filed.[10] *See*

---

9. Based upon the Supreme Court's decision in *Laidlaw III,* this Court concluded that GEC had standing to request this Court to impose civil penalties upon Southdown, even in the face of a no longer viable request for injunctive relief. *See* Doc. # 88.

10. Herein, it is not questioned that Southdown's alleged violation was ongoing at the time suit was filed. Indeed, there is no evidence that the discharge of pollution from the landfill without a permit has ceased. Southdown's request for summary judgment is not

Doc. # 104 at 6 (citing, *inter alia, Atlantic States Legal Foundation v. Stroh Die Casting,* 116 F.3d 814 (7th Cir.), *cert. denied,* 522 U.S. 981, 118 S.Ct. 442, 139 L.Ed.2d 379 (1997); *Natural Resources Defense Council v. Texaco,* 2 F.3d 493 (3rd Cir.1993); *Atlantic States Legal Foundation v. Pan American Tanning,* 993 F.2d 1017 (2nd Cir.1993); and *Atlantic States Legal Foundation v. Tyson Foods, Inc.,* 897 F.2d 1128 (11th Cir.1990)). As a means of analysis, the Court will initially address the Plaintiff's argument, following which it will turn to Southdown's premise.

In *Laidlaw III,* the Supreme Court indicated that it had granted certiorari in order to resolve the inconsistency between the Fourth Circuit's decision in *Laidlaw II* "and the decisions of several other Courts of Appeals, which have held that a defendant's compliance with its permit after the commencement of litigation does not moot claims for civil penalties under the [CWA]." 528 U.S. at 179–80, 120 S.Ct. 693 (citing *Atlantic States Legal Foundation v. Stroh Die Casting,* 116 F.3d 814 (7th Cir.), *cert. denied,* 522 U.S. 981, 118 S.Ct. 442, 139 L.Ed.2d 379 (1997); *Natural Resources Defense Council v. Texaco,* 2 F.3d 493 (3rd Cir.1993); *Atlantic States Legal Foundation v. Pan American Tanning,* 993 F.2d 1017 (2nd Cir.1993); and *Atlantic States Legal Foundation v. Tyson Foods, Inc.,* 897 F.2d 1128 (11th Cir.1990)). Although the Supreme Court rejected the approach adopted by the Fourth Circuit in *Laidlaw II,* the Court did not embrace the counter proposition set forth by the other Circuits that the defendant's post-complaint compliance did not render a request for the imposition of civil penalties moot. Rather, the Supreme Court held that whether such a request was moot had to be ascertained in accordance with the standards quoted above and remanded the matter for resolution of that question.[11] Accordingly, this Court rejects the Plaintiff's argument that a request for the imposition of civil penalties under the CWA is not rendered moot by the defendant's subsequent compliance with that statute, as long as the violation was ongoing at the time suit was filed. Whether such a request is moot must be decided in accordance with the standards set forth by the Supreme Court in *Laidlaw III* and the decisions relied upon therein by the Supreme Court.

As is indicated, Southdown contends that in accordance with those standards, its transfer of the property on which the landfill is located to Dirtvest and Sandhill renders the Plaintiff's request for the imposition of civil penalties moot. This Court cannot agree. In *City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), the Supreme Court applied the standards for determining mootness, set forth in *Laidlaw III* and the cases relied upon therein, to conclude that a dispute was not rendered moot by analogous post-complaint events. The plaintiff in *Pap's A.M.* filed suit in Pennsylvania state court, alleging that an ordinance adopted by the City of Erie, banning nude dancing, violated the First Amendment to the United States Constitution. The Pennsylvania Supreme Court upheld

---

based upon the proposition that its post-complaint actions have prevented additional pollution from leaving the landfill. Rather, Southdown relies solely upon the fact that it has sold the landfill.

**11.** As GEC points out, Justice Stevens, in his concurring opinion, would have followed the approach set forth in the decisions upon which it relies and, thus, would have held that subsequent compliance does not moot a request for the imposition of civil penalties. 528 U.S. at 195–97, 120 S.Ct. 693. The majority of the Court did not, however, follow those decisions.

that position. Erie sought and obtained review of that decision before the United States Supreme Court. The respondent (Pap's A.M.) initially argued that the controversy had become moot, because it had ceased to operate the establishment at which it had offered nude dancing. Indeed, it had sold the building in which it had operated the establishment offering such dancing, and that building had been converted into a comedy club. Moreover, its owner submitted an affidavit indicating that he was 72 years of age and had no intention of opening another club which would feature nude dancing. Nevertheless, the Supreme Court concluded that Pap's A.M. "could again decide to operate a nude dancing establishment in Erie," since it remained incorporated under Pennsylvania law and, citing *Laidlaw III,* that the controversy was not moot. 529 U.S. at 287–88, 120 S.Ct. 1382. It bears emphasis that in *Laidlaw III,* the Supreme Court restated generally applicable principles of mootness, albeit in the context of a request for the imposition of civil penalties in a citizen's suit under the CWA. Therein, the question was whether the defendant's substantial compliance with its permit demonstrated that the dispute was moot under those principles. *Pap's A.M.,* which also employed those generally applicable principles, is, however, more analogous to this litigation, since both that case and this lawsuit raise the argument that the transfer of property has mooted the dispute. Herein, Southdown, like Pap's

A.M., has transferred its property and contends that, as a result, mootness prevents this Court from proceeding with Plaintiff's request for the imposition of civil penalties. However, there is no indication that Southdown has ceased to exist as a corporate entity; therefore, it could once again operate a landfill from which pollutants are discharged without a permit.[12]

With its Supplemental Authority (Doc. # 119), Southdown has cited *San Francisco Baykeeper, Inc. v. Tosco Corp.,* 2001 WL 114445 (N.D.Cal.2001), and *Communities for a Better Environment v. Tosco Refining Company, Inc.,* 2001 WL 114441 (N.D.Cal.2001). Those two decisions arose out of citizen suits under the CWA, alleging that the defendant was discharging pollutants from two of its facilities, in a manner which exceeded the amounts authorized by its permits.[13] In each instance, the defendant sold the facility to a third-party after the litigation had been initiated. In two separate decisions, District Judge Susan Illston concluded that, in accordance with the Supreme Court's decision in *Laidlaw III,* the plaintiffs' requests for the imposition of civil penalties had been rendered moot by the sale of the defendant's facilities, as there was no possibility of the violations recurring. In those decisions, that judicial officer did not, however, discuss *Pap's A.M.;* therefore, this Court does not find those decisions to be persuasive and declines to follow the result reached in them.[14]

---

**12.** The Plaintiff has alleged that Southdown has used and continues to use the landfill to dispose of waste generated at its facility used to manufacture cement. There is no indication that Southdown has ceased operations at that manufacturing facility, thus eliminating its need for a landfill to dispose of its waste.

**13.** One lawsuit involved the defendant's facility located at Pittsburg, California, while the other arose out of the defendant's facility at Martinez, California.

**14.** In its Response to Southdown's Supplemental Authority, submitted to the Court on March 26, 2001, GEC argues that this Court should decline to follow the decisions entered by Judge Illston in *San Francisco Baykeeper* and *Communities for a Better Environment.* GEC also argues that *Pap's A.M.* is the appropriate authority for this Court to follow when deciding whether its (Plaintiff's) request for the imposition of civil penalties is moot. For the reasons set forth in the text above, this

In sum, in accordance with *Pap's A.M.*, this Court concludes that Plaintiff's request for the imposition of civil penalties is not moot. Accordingly, the Court overrules the Southdown's Motion for Summary Judgment (Doc. # 100) to the extent that, with that motion, it seeks summary judgment on the Plaintiff's request for the imposition of such penalties.[15]

Court has followed *Pap's A.M.*, rather than *San Francisco Baykeeper, Inc.* and *Communities for a Better Environment.*

15. The Court has sustained that motion as it relates to Plaintiff's request for injunctive relief. *See* Footnote 4, *supra,*